ALBANY,
1804.

R. S. Hallett
& W. Bowne,
v.
Eben. Jenks
and others.

## Thomas Waters, Richard Thorne, and Sarah his Wife, Appellants, against John Stewart, Respondent.

THIS was an appeal from a decree of his Honour the chancellor. The complainants filed their bill, as well in behalf of themselves as others the heirs and devisees of Sarah Wisner, deceased, who might come in and contribute, &c. &c. The bill set forth an indenture of three parts, dated the 8th April, 1769, between Henry Wisner, since deceased, of the one part, Sarah Waters, since deceased, of the second part, and the complainant, Richard Thorne, of the third part; which indenture was admitted by the defendant; and among other things, as far as it is material, substantially contained as follows:—That in consideration of a marriage about to take place between the said Henry Wisner and Sarah Waters, she had conveyed to him all her estate, real and personal, authorizing him to sell and dispose of the same; the monies thence arising to be enjoyed by the said Henry Wisner, during the joint lives of him and the said Sarah, he maintaining and educating three children of her's by a former husband, namely, Elizabeth, Hannah, and Thomas Waters, till they should come of age or marry, if the said Henry should so long live. But in case the said Sarah should survive the said Henry, the money arising from her estate as aforesaid, should be paid to her; and in case he survived her, it was to be paid to her children before named; and that in such case she should have and enjoy during her widowhood, a dwelling-house and

Under our act concerning judgments and executions, an equity of redemption may be sold by the sheriff, under an execution on a fi. fa.

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

farm of his, situate in Goshen, containing about seventy acres, *which were the premises in question.* It was admitted that the marriage between Henry Wisner and Sarah Waters took place ; that he took and disposed of the property she conveyed to him, to the amount of £425. That Henry Wisner died in the life time of Sarah, insolvent, but did not secure to her the money arising from her estate as he covenanted to do ; consequently, that a considerable sum was due to her after his death, and to her representatives after her death, from Wisner's estate, which can never be obtained, *unless the premises in question are made liable.* That Sarah, the widow of the said Henry Wisner, enjoyed the said house and farm in Goshen, during her widowhood, under and by virtue of the said marriage contract, and until her death, which happened in or about the month of July, 1801. It was also admitted, that Henry Wisner, deceased, in his life time, to wit, on the 14th day of February, 1786, mortgaged the said house and farm to William Beekman, to secure payment, on or before the 14th day of February, 1787, of £387. 13s. with lawful interest, bona fide due. That William Beekman on the 13th of October, 1792, for the consideration of £300, (200 whereof was then paid, and a bond given for the remaining £100, payable on the death of the said Sarah Wisner) sold and assigned the said mortgage and a bond which accompanied the same to the respondent, John Stewart, with all the money due and to grow due thereon. That a judgment at law was obtained against the said Henry Wisner, deceased, and thereupon a *fieri facias* and *venditioni exponas* were issued to the sheriff of the county of Orange, who by virtue thereof, in the life time of the said Sarah, the widow of the said Henry Wisner, among other things, sold the equity of redemption of the said mortgaged premises, subject to the said widow's estate therein, to Henry Wisner, junior. That Henry Wisner, junior, on the 19th day of April, 1791, conveyed among other things, the right and interest he had purchased in the said premises, to Polydore B. Wisner, as a trustee, to enable him to sell and convey the same ; and Polydore B. Wisner, on the 11th of January, 1793, conveyed the said equity of redemption in the said mortgaged premises to the defendant, John Stewart, in satisfaction of a book debt he had against Henry Wisner, the elder, then deceased.

Thus the defendant, as assignee of the mortgage and the purchaser of the equity of redemption, under a sale on an execution at law, claimed to be the legal and absolute owner of the house and farm in question. It was admitted that Henry Wisner, deceased, by will duly executed, devised the said house and farm to his two daughters Elizabeth and Sarah, in fee. That, since the death of the said Henry Wisner, and before the bill was filed, the said Elizabeth and Sarah, in due form of law, conveyed all their right and interest as such devisees in the said house and farm, to the complainant Thomas Waters, in fee. The bill was to redeem the house and farm, by paying to the respondent, Stewart, what he was entitled to receive as the assignee of the mortgage ; that is to say, the sum he paid with interest ; or, if he should be entitled to it, the whole amount of the mortgage-money and interest. This right of redemption was contended for before the Chancellor on two grounds ; *First*, That the complainant, Waters, and the other children and heirs of Sarah, the wife of Henry Wisner, were creditors under the marriage contract; and that, in equity, that contract bound the premises in question to pay those demands, after paying the mortgage given to Beekman. *Secondly*, That an equity of redemption could not be seized and sold by virtue of an execution at law, and that consequently, Thomas Waters, having purchased and taken a conveyance from the devisees of the estate, had a right to redeem the mortgaged premises upon equitable principles, by paying the assignee of the mortgage what he was entitled to.

The Chancellor being of opinion against the complainants on both grounds, decreed that the bill should be dismissed with costs, and thus assigned the reasons on which he had pronounced.

Mr. President—This cause came before the court on a motion for the dissolution of an injunction, issued to restrain the defendant from obtaining possession at law of the premises in question. On that motion the whole ground of controversy was explored, and the counsel for the parties, discovering that a determination on it would involve a decision on the merits generally, argued it a second time, *as on a final hearing*. In doing this, they united in presenting, as a determining point between the parties, simply, whether an equity of redemption in lands mortgaged in fee, is subject to a sale

H

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

3 Co. 11. Har-
bert's case. 2
Inst. 394.

2 Bl. 332, cites
use of the law,
153.
5 Ed. 3 Ch. 6.
2 Rich. 2 C.23.
19Hen.7 C.15.
27Hen.8 C.10.
29 Ca. 2 C. 3.

2 Bl. 337.

as a fieri facias?   To determine this question, the nature of
the subject, and the course of the arguments of the counsel, lead
me cursorily to trace the progress of the English jurispru-
dence (as far as it has any bearing on this point) from its de-
parture from the common law, until the act of the 5th Geo.
2d, and the subsequent modifications it has received here.
It is certainly a sound moral principle, that every description
of property held by a debtor, should be subject to the pay-
ment of his debts.   The policy deduced from the feudal sys-
tem, was, however, far from being in strict unison with this
principle; and had so far blended itself with the English insti-
tutions, as generally to resist the infusion of those dictated by
more just and liberal views.   This detracted from the security
and preservation of lands in the hands of those who held them,
and their heirs; for, at common law, only goods and chattels,
and the growing profits of land were, on a levari facias, or a
fieri facias, liable for the satisfaction of debts.   This strict-
ness was somewhat retained by the statutes of elegit; for it
appears to have been a reluctant departure from the more an-
cient doctrine—certainly not reconcileable to its general scope
and object, and equally remote from the principle the framers
of the statute appear to have been disposed to approach: for,
instead of carrying the remedy the length which complete
and effectual justice required, it subjected only half of the
debtor's real estate to an extent, with a reversionary interest
to him or his heirs, after the debt was satisfied from the pro-
fits of the lands.   The inroad made on the common law prin-
ciples, by giving the elegit, has, however, been protected by
several successive statutes: thus Blackstone, in his Commen-
taries, enumerates, among the evils arising from the doctrines
of uses, *the defrauding the creditor of his extent for debts.*   He
adds, to remedy these inconveniences, abundance of statutes
were provided, which, among other things, made the land li-
able to be extended by the creditors of cestui que use.   Among
these, the statutes of uses, and of frauds and perjuries, were
most effective; and, after the passing of the latter statute, a
*trust estate,* whether declared or resulting, was considered, in
the language of Blackstone, " as equivalent to the legal owner-
" ship, governed by the same rules of property, and liable to
" every charge *in equity,* which the other is subject to *in law.*"
" The trust may descend; be alienated; is liable to debts;

" to executions on judgments, statutes, and recognizances
" (by the express provision of the statute of frauds) to for-
" feitures, to leases, and other incumbrances, nay, even to
" the curtesy of the husband, *as if it was an estate at law.*"
Thus, in the case of Casborne v. Scarfe and Inglis, lord Hard-
wicke lays it down, that an equity of redemption cannot be
considered as a mere right: but such an estate whereof there
may be a seisin, and that the person entitled to it is consider-
ed as the *owner of the land;* .that an actual possession, cloth-
ed with the receipt of rents and profits, is the highest instance
of an equitable seisin; and that the mortgagee, as to the legal
estate and inheritance, is merely *a trustee* for the mortgagor,
until the equity of redemption is released or foreclosed.    In
the case of Amhurst v. Dawling, an advowson, appendant to
a mortgaged manor, had, before that, been held in the nature
of a *trust* for the benefit of the mortgagor: so, in the case of
the Attorney-General v. Hasketh et al', in which the same
doctrine had before been laid down; and it is in that case ex-
pressly declared by the lord Keeper, *that the court which sup-*
*ports trusts, will prevent trusts from doing mischief.*    The spi-
rit of these cases has been recognized and enforced in the
British courts of *common law.*    In the case of the King v.
the Inhabitants of St. Michaels, decided after our revolution,
lord Mansfield emphatically declares it to be " an affront to
" common sense to say, that the mortgagor is not the real
" owner."    And whatever might have been the construction
at an earlier day in those courts, in equity, the intent of the
parties has been permitted to give a complexion to this kind
of transaction, and to constitute it a naked security for the
payment of money, without any of the substantial rights of
ownership.    It is merely a lien until it is foreclosed, or the
possession acquired by the mortgagee: thus the mortgagor,
until either of these events occur, is the beneficial owner; he
takes the rents and profits without any account; he is a free-
holder, qualified to vote as such, and he is deemed the owner
of a landed estate within the English settlement laws.    The
provision for admitting him to vote, is, indeed, by statute;

*Margin notes:*

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

1 Atk. 603, in
1737.

2 Vern. 401,
in 1700.

2 Vern. 549,
in 1706.

Doug. 610. 25
Geo. 3.

Doug. 455.
Eaton v.
Jaques *.

* This case went on a principle of there remaining in a lessee, after an
assignment by way of mortgage of all his right, title, &c. in the term, and
after forfeiture, such a degree of interest as to prevent the lessor from suing
the mortgagee as assignee of all the estate, &c. of the mortgagor. But in

but it appears to me merely a declaration of the law, previous to the passing of the act, and introduced for greater caution. The case of Lyster v. Dolland, reported in 2d Brown's Ch. Rep. 478, and 1 Vesey, J. 431, does not impugn the general doctrine; for in the report of that case in 1 Vesey, the lord chancellor admits, " *that an equity is extendable,* and the mortgagor is expressly let in to redeem, on the ground that the " mortgagee had so mixed his own interest with that of the " mortgagor, that they could not be distinguished." I take it, then, that an equity of redemption in England is an extendable interest, and that so is the property of cestui que trust in the hands of trustees. Bunb. 346. The solicitude of the holders of landed estates, to perpetuate them within families, combined with the genius of the English government, contributed to maintain the distinction between real and personal property, which obtained after the passing of the statute of elegit : but the collision between the landed and commercial interest being merely *local,* as confined to Great Britain, and not so extending to its colonies as to re-act by influencing its parliament, in which the landed interest of those colonies had neither a direct nor virtual representation, the same impediments did not present to the passing of the stat. of 5 Geo. 2 chap. 7, for the more easy recovery of debts in the colonies. This subjected real estate to a disposition, in like manner as personal, on execution, and a remedy was thereby given, co-extensive with the property of the debtor, regardless of the distinction which had been so sedulously preserved in Great-Britain. This statute so far extended in practice in this state, while a colony, as to affect lands by sales on executions, issued on judgments obtained against the executors of debtors, on the principle, that the statute of 5 Geo. 2, had, in its operation, *so far as respected the interest of creditors,* completely converted real into personal estate. It is certain, that sales of equities of redemption have been uninterruptedly made, from the time of passing that statute, until the legislature passed the statute of 19 March, 1787 ; and the same practice, as to such sales,

*Stone v. Ewer, Sitt. at West. before Kenyon, af. M. T. 39, G. 3, his lordship declared he could not subscribe to the doctrine laid down in Eaton v. Jaques; and in Westerdale v. Dale, 7 D. & E. 306, it seems evident that his lordship considers the mortgagee of a term for years, liable to the rent reserved.*

has continued to prevail under the latter statute. This statute subjected every species of estate, comprehended in the very extensive description of "*lands, tenements, and real estate,*" to be sold on execution, and is strictly compatible, in its most comprehensive construction, with the general provision, that both real and personal estate, in the hands of the heir or executor, (and whether the debt was contracted by specialty in which the heir was named, or otherwise), shall be applied to the satisfaction of the debts of the ancestor, or testator. There is one objection which was strongly urged against giving effect to those sales here, and that is, that the purchaser could not take the effect of it at law. If this position was correct, I do not think it is so forcible as the counsel who urged it. A sale on execution is *not enforced peculiarly by the court under whose process it is made;* the evidence of the sale is furnished by the sheriff, and the purchaser elects the forum, to which he intends to resort, to give him the benefit of it. If any of the fora of the state are competent to give him the effect of his purchase, every intent of the sale is fully accomplished; and I know no legal or equitable principle that can repel this result. But if the mortgagor was possessed, at the time of the sale, the controversy must strictly be between the mortgagor and purchaser: no inconvenience can arise from compelling the former to yield his possession to the latter. Thus, in a recent case, it has been held in the K. B. in the case of Bristow v. Pegg, 1 D. & E. 758, 25 Geo. 3 *, if there is an existing title paramount the person who holds, he may avail himself of it by showing it, and it does not lie in the mouth of the *mortgagor* to allege its existence; for, notwithstanding a title might exist, by virtue of which the person *actually seized* might be ousted, it would seem strange that *his right of seisin* should pass by the sale, and the latent equitable interest which he had in the lands, should be retained by him. From these considerations; from the number of estates which depend on supporting sales of this nature; from the long practice which has obtained respecting them; and from the great inconvenience which would result from the doctrine, that however great the disproportion between the sum secured, and the value of the estate charged with it, the latter might be protected from being applied to the satisfaction of judgment creditors on executions, I think sales of this

*ALBANY,*
*1804.*

Thos. Waters
and others,
v.
John Stewart.

1 Rev. L. 388,
sect. 1.

* See Hodsden
v. Staple, 2 E.
684, which
seems to have
shaken Bristow v. Pegg,
at least in the
English courts.

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

kind ought to be sustained; and that, whether the mortgagor is considered *as the real owner*, or the mortgagee is considered as *his trustee*, an equity of redemption is within the purview of our statute, *and subject to sales on execution.* The complainants' bill must, therefore, be dismissed with costs.

Riggs for the appellants. We admit the moral justice and policy of making every man's property liable to his debts, and we shall even concede that with us, these principles have been carried further than in England; but notwithstanding this, the distinctions between legal and equitable estates, have in each been preserved, their boundaries equally marked out, and the fora by which they are to be approached kept invariably distinct. In equity, the mortgagor is considered as owner of the land; at law, the estate, on executing the mortgage, is in the mortgagee, and he may, unless restrained by his covenant, enter immediately. 1 Pow. on Mort. 205. 226.

* 1 Pow. on Mort. 232.

And though a mortgagor, left in possession, pays no rent *, *that* arises merely from the contract, the interest of the money being an equivalent. He is a mere tenant at sufferance to the mortgagee; for after forfeiture, so completely is the legal estate vested in the mortgagee, that the mortgagor is not entitled to the common notice to quit, which must be given to a tenant at will. The idea of a constant practice to sell, under a fieri facias, equities of redemption, is a mistake; I never heard of but two instances; one was settled, the other is now in dispute. The maxim therefore of, communis error facit jus, cannot apply. But errors merely acquiesced in, and never disputed, do not constitute the law †. Actions

† In Lench v. Pargiter, the practice under the lords' act had been one way for 30 years, but was altered the first time the statute came under consideration of the court. Doug. 68.
‡ Way v. Carey, 1 N.Y.T. R. 191.

by and against executors and administrators, had been from the date of our revolution entertained in justices' courts; yet the first time one was brought before the supreme court, they reversed the judgment below ‡. So under the act giving cognizance of plaints. Another instance is afforded by the corporation of New-York. They had for 40 years been in the habits of creating penalties, and giving half to the informer. Suit upon suit had been brought, and recoveries had, yet their right to do this was over-ruled the instant it was attacked in the supreme court. All power of selling under executions at law landed property, or any thing savouring of the realty, is by statute provision; and what the words of the statute do not cover, cannot be sold. Therefore equities of redemption,

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

even of chattel interests, in terms of years, are not saleable under a levari facias, because the act has not the words " equitable interests." Burden v. Kennedy, 3 Atk. 738. Lyster v. Dolland, 3 Bro. C. Rep. 478. 1 Vez. J. 431. S. C. will be found to this point, notwithstanding the chancellor's apprehension of its bearing the contrary way. An equity of redemption is not known at law ; it is a mere creature of chancery, and cannot be contemplated, therefore, as an object of sale, by a court which does not acknowledge its existence. What is not, according to legal contemplation, in possession, but rests merely in right, cannot be taken in execution. Choses in action therefore cannot be seized on. Francis v. Nash, Ca. Temp. Hardwicke, 53. Impey's sheriff, 157. On the same principle, goods pawned, demised, or letten for years, are not liable to a fi. fa. Impey's sheriff, 158. Audley v. Halsey *, Cro. Car. 148. Kitchen, 226. To make an equity of redemption saleable at common law, will defeat the ends of distributive justice. A debt due on a book account, note, or on a bond, is as much a debt in conscience as one on a judgment ; but if the decision appealed from be confirmed, one judgment creditor may run away with even the equitable estate, and exclude all the other bonâ fide, though simple contract creditors, from every farthing. It has been the policy of our courts to extend equitable assets, because they are appropriated in payment of debts pari passu. For this purpose an equity of redemption is considered as equitable assets, not for the purpose of rendering it inapplicable, but that it may be equally distributed. 2 Atk. 290 †. 1 Vern. 410, 1-2 ‡. Vern. 61 §. 3 P. W. 341. Sir Charles Coxe's case. 3 Keb. 307. Amb. 308 **. 2 Freeman, 115. 3 Woodeson, 487. It is so perfectly an equitable interest, that in an action against the heir of a mortgagor, he can plead rien par descent, though entitled to an equity of redemption. 1 Pow. on Mort. 369. In all cases where land can be taken for debts, the debt must be a lien on the land, and in case of the death of the judgment debtor, after an intermediate alienation, a scire facias

* The action there, was trover for goods, the question was, whether, after an extent sued out before a commission of bankruptcy against the connusor owner, though the liberate was afterwards, should prevail against a sale by the commissioners? Held that it should.
† Plunket v. Benson.
‡ Cole v. Warden. Plucknet v. Kirk. The distinction between mortgages in fee and for years, was in the three cases above, taken and allowed as to the nature

of the interest left in the mortgagor. In mortgages for years, the reversion being a legal estate in the mortgagor, attracts the equity of redemption, and gives it the quality of the reversionary interest. In such a case, therefore, the equity of redemption is legal assets. But if the mortgage be in fee, as there is not any legal interest left in the mortgagor, the equity of redemption is equitable assets.

§ Sauley v. Gower.          ** Hartwell v. Chitters.

goes against the tertenant.   But in the case of a mortgage,
then a judgment, then the death of the mortgagor, to a scire
facias against the tertenant, he may show title in the mort-
gagee ; which demonstrates the legal estate to be out of the
heirs of the mortgagor.   The saleability of an equity of re-
demption is not denied, but convenience demands it should be
in chancery.   A mortgage may have been for $10,000, and
only one thousand due ;  the registry may show the full
amount of the original sum lent to be still owing, and the
equity be purchased, under that presumption, for a trifle.  The
reverse may be the case ; double the sum apparent may,
from accruing interest, be due, and the equity bought for a
large sum, when in fact not worth a cent.   Each of these
cases may produce a bill in chancery.  The mode of coming at
equities of redemption is easy, without any violation of prin-
ciples, preserving at the same time, the true distinction be-
tween equitable and legal estates, and the jurisdictions by
which they are cognizable.   Let the creditor sue to judg-
ment, then, by the analogy adopted in chancery, as the judg-
ment would at law attach on the legal estate, its operation in
equity will affect the equitable interest, and an incumbrance
be created, which on execution sued out ※, will entitle the judg-
ment creditor to his bill against the mortgagee to redeem.
3 Atk. 200 †. 1 Pow. on Mort. 349. 359. 360. 2 Ch. Ca. 170 ‡.
This brings the whole matter before the court, which alone
can give full relief ; the account on the mortgage is entered
into ; the sum due upon it discharged, and the balance paid
over.   The Statute § by which trust estates are made liable
to debts, will not warrant the decree complained of.   That
act relates only to fraudulent and covenous trusts, in which the
cestui que use has the sole beneficial interest ; it is a part of
the statute of frauds, and therefore our act declares that ※ the
land shall, under the sale, be held discharged of all such in-
cumbrances.   This would defeat the mortgage.   The En-
glish authorities confine their law of frauds and perjuries, of
which ours is a copy, to these trusts, and do not extend them
to equities of redemption.  2 Saund. 203. Hard. 467†. 1 Black.
Rep. 145 ‡.   Our act, subjecting lands to debts, makes a
provision in case the purchaser should be evicted : now, it is
impossible for a man to be evicted from an equity of redemp-
tion ; and if he was by the mortgagee, he would be entitled to

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

※ That is,
where the
mortgage is of
a leasehold or
chattel inter-
est.
† Shirly v.
Watts.
‡ Griswold v.
Marsham.
§ 1 Rev.Laws,
66.

※ 1 Rev.Laws,
68.

† Pawlet v.
Att'y Gen.
‡ Burgess v.
Wheate.

1 Rev. Laws,
391.

recompense from the judgment creditor himself. This would make the remedy recur to the same point from whence it set out. In the case mentioned, there could be no *legal* seisin of the interest to be sold, and the form of the execution is of lands " whereof seized *." All that can be obtained against a mortgaged estate by a judgment at law, is an equitable lien ; for a judgment creditor cannot tack. 1 Pow. on Mort. 526 to 529. After sale of an equity of redemption by the sheriff, he could not give possession ; ejectment would not lie upon his deed, and chancery must be at last resorted to, to give effect to the sale.

Hoffman and Hamilton contra. As the lands and real estate of a debtor may be taken in execution, under our statute †, the words being " all and singular the lands, tenements, " and real estate," the only question is, who is the owner of lands or real estate mortgaged? If the mortgagor was out of possession, we concede the sale would not be valid ; and *that* was the circumstance of the case from Atkyns ‡ ; the termor had parted with the possession. Till the decision in Brown and Vesey, J. the saleability of an equity of redemption on an execution was never doubted ; and, in favour of its being vendible under a fi. fa. the opinion of Mr. Powell § is a very strong authority. There can be no reason for excluding it from this incident annexed at law to real estates, when it partakes of every other quality which characterizes land. The mortgagee is proprietor of the mortgaged premises only so as to protect his security ; against all the world but him, the mortgagor is the real owner. He may when in possession levy a fine **, or suffer a common recovery ††, and must

** This he may do, without having any interest in the land, and in such a case the fine operates not on the land, but against the parties, by way of estoppel. Anciently, the cognizee was put, on a purchase made, into possession before the fine was levied, and the vendor, by way of security, levied the fine afterwards. 3 Bac. Abr. n. Ed. 194. Under the words of our statute, a fine passed by a person out of possession, will be as effectual against his rights and the rights of his privies, as if he was in possession ; for it will be a perpetual estoppel, unless the persons claiming can bring themselves within some of the exceptions. On this principle, the case of Weale v. Lower, Pollex. 54, was determined. Fines sur concessit, and cognizance de droit tantum, are for the purpose of passing interests where the cognizor has not a freehold in possession.

†† Either to be a tenant to the præcipe, or to make one, it is necessary that the tenant, in one case, or the grantor in the other, should have the legal freehold in possession. 2y. How would a mortgagor, after a mortgage in fee, be considered ? The argument, as to a mortgagor suffering a recovery, is as good for the mortgagee. See Palm. 135. Cro. Jac. 593.

I

*[Margin notes:]*

ALBANY, 1804.

Thos. Waters and others, v. John Stewart.

* 1 Rev. Laws, 390, S. 9.

† 1 Rev. Laws, 388.

‡ That, however, was not the point on which the decision turned. In King v. Marissal, 3 Atk. 192, it is to be inferred that the mortgagee was in possession ; but in Shirley v. Watts, ib. 200, the contrary is rather to be supposed.

§ Pow. on Mort. 339, is the only place where I can discover any law on this point ; in my edition, which is of 1799, no opinion is given, and the case cited is contra the extendibility.

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

therefore have the legal freehold in him. His fine bars all rights but that of the mortgagee, who is not affected * by five years non-claim ; and need not make an entry. 1 Pow. on Mort. 220. In consequence of this ownership of the mortgagor, his interest in the equity of redemption has all the properties of a legal estate. It passes by a general devise of " all " my real and personal estate. 1 Pow. on Mort. 353. It descends ; the personal estate is first liable for debts ; it may be entailed ; it follows the custom in borough English. 1 Pow. 346. Nay, a mortgagor gains at law a parish settlement in consequence of his legal ownership †. Doug. 632 ‡. Lord Mansfield in that case says, " It would be an affront to common sense to say the mortgagor is not the real owner." But further a mortgagor is not accountable to a mortgagee for profits, even after the mortgage is forfeited. A mortgage in fee revokes a devise only pro § tanto. The right of presenting belongs to the mortgagor of lands to which an advowson is appendant **. Our statute book recognizes the mortgagor as the freeholder : he is declared to be qualified to vote at elections in virtue of the freehold †† in him. The estate of the mortgagee ‡‡ has none of these qualities. He has only a qualified right sufficient to protect his debt. To make his title efficient, he must foreclose ; but though he do this, and enter, he is considered but as bailiff to the mortgagor, and liable to account §§. If he even assigns his interest, he still continues liable for the waste and depredation of his assignee. A general devise by him of all his estate, will not, even after fore-

* The generality of this position may, perhaps, be doubted. A fine does not affect any estate which it does not devest, displace, or turn to a right. As between the parties and their privies, the intent will control the operation. Freeman v. Barnes, 1 Sid. 460. The mere circumstance of there being an existing mortgage, would not, it may be argued, prevent the effect of a fine in barring the mortgagee. If the mortgage be by demise, and the interest regularly

paid by the person in possession, a fine and non-claim would not, I presume, be a bar. Fermor's Case, 3 Rep. But should the estate be forfeited, and interest not paid, then it may be a question whether a sale by a mortgagor in possession with a fine levied, would not, after five years, bar the mortgagee. Saffyn's Case, 5 Rep. 123. The reasoning in favour of such a result, may possibly be enforced by the case of Dighton v. Grenville, Cruise on Fines, 246, where the decision of the House of Lords is given, though in none of the Reports of this case has it been noticed. A mortgage in fee may possibly be distinguished ; for the mortgagee may, perhaps, there say, partes finis nihil habuerunt.

† It perhaps depends rather on his possession ; for if the mortgagee be in possession, he will gain the settlement. Pr. Ld. Mansfield in the case cited.

‡ The King v. St. Michaels.

§ This is in equity ; at law it is contra, and on the very principle that the legal estate is parted with by the testator during his life. See 1 Vern. 342.

** This is true in equity, but not at law, for the mortgagee having the legal estate, has the right of presentation ; and the mortgagor, to prevent its exercise, must apply to equity. Galley v. Selby, Com. Rep. 343. Croft v. Powel, ibid. 609.

†† While in occupation. 1 Rev. Laws, 274. When he parts with that, he loses his right.

‡‡ He has, when in possession, a right to vote, ibid. and note the diversity of expression.

§§ If the decree of foreclosure be opened.

closure and possession, pass the lands mortgaged *. It goes to his executors as personalty, and not to his heirs, as the realty would. 1 Pow. on Mort. 438 et seq. He has but a chattel interest. Where then can the fee be, if not in the mortgagor ? This is further established, because a mortgage will pass by a will, not attested according to the statute. 1 Pow. 455. The interest of the mortgagee is intrinsically nothing more than what arises from the contract of borrowing, and therefore, when the debt is paid, there needs no reconveyance of the estate to the mortgagor †. This shows the legal estate remains in him, by virtue of the equity of redemption, and is necessarily liable for his debts by sale at common law under an execution. If this would destroy the mortgagee's security, then it could not be valid ; but it is not so, the land remains subject to the mortgage. It is not an answer to this reasoning, to say, that our positions rest on chancery decisions. In equity, and at law, the rules relating to landed property are the same. 1 D. & E. 762, per Buller, J‡. Courts of law have latterly been disposed to acknowledge equitable principles, to avoid sending creditors there. On this account the assignor of a bond, though it be a chose in action, cannot, after assignment, release the obligation ; nor can even the obligor, after notice, discharge it. The inconveniences of selling an equity of redemption on account of an existing mortgage, are imaginary. They are no greater than in a sale on a third judgment, where there have been two previous ones for the penalties of bonds. The purchaser takes subject to the incumbrance. An equity of redemption is equitable assets § only in a certain sense : Among those who have no lien on the land ; such as on a bill to redeem

ALBANY, 1804.

Thos. Waters and others, v. John Stewart.

\* After foreclosure, if the devise treat the mortgaged premises as land, they will pass by words applicable to real estate. Garret v. Evers. Mosely, 364. So if the will be properly executed acording to the statute, " all my estate." Pow. 448. See 1 Pow. ch. 12. See 2 Pow. 692, et seq.

† See Harrison v. Owen, 1 Atk. 520, that to revest the estate, there must be a deed. In Turner v. Richmond, 2 Vern. 81, a mortgage paid off was, as there was no reconveyance, held to protect a judgment creditor against a second mortgagee. This must have been on the principle of the legal estate being in the mortgagee. ‡ Goodtitle v. Morgan.

§ The cases on this point in the English books, seem to be involved in some degree of perplexity. In Sir Charles Cox's case, 3 P. W. 341, and in Hartwell v. Chiters, decided upon the authority of that case, the equity of redemption of a mortgaged term, was held to be equitable assets. It appears, however, that it is not ; for, as the executor, had there not been a mortgage, would have had the term to apply in a course of administration, it would seem the equity of redemption would go to him also, on the same principle as it is held to pass in cases of real property, to him who would be entitled to the land. Hawkins v. Lawse, 1 Leon. 155, and the cases cited by Mr. Coxe, in his note, 2 P. Will. 344. Whether the equity of redemption in real estate, shall be legal or equitable assets, may perhaps depend on another question ; that is, whether the mortgage be in fe , or by way of demise for a term of years ? In the former case it has been conceded, that it is equitable, because the mortgagor has parted with all his legal estate, and the pure equity which determines the nature of the assets, is all that

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

by general creditors, or in a trust for payment of debts; but not against a judgment creditor who by his very judgment obtains a lien which will entitle him to redeem.  1 Pow. on Mort. 348.  To force him to this alone, is a grievance for which our statute meant to afford redress, by permitting him to sell to a person who may be able to redeem.  A mortgage contract may be for 10 years, with a covenant that the mortgagee shall not be compellable to receive it before; must a creditor, or a judgment recovered immediately after execution of the deeds, wait ten years?  The simple mode is to sell at once under a fi. fa. for chancery cannot order a redemption.  The argument against selling an equity of redemption because it is equitable assets, is equally forcible against selling trusts; for by the statute of uses they are made liable to be sold by the sheriff.  So before the passing that act an heir might have pleaded riens per descent, though a covenous trust was existing; yet, since that law has been enacted, such a trust is saleable under execution.  Though ejectment on a sheriff's deed for an equity of redemption could not lie against the mortgagee, yet a mortgagor would never, in a court of law, be allowed to set up the title of his mortgagee against the purchaser; and against the mortgagee there would be no claim, because the purchase would be subject to his demand.  If a mortgagor may sell, why may not a sheriff?  Whatever the debtor can dispose of, his creditor can sell.  The remedy given in case of eviction, is where the debt-

remains in him.  In the latter, as he retains the legal reversion after the term created by the demise, that interest gives the quality to the assets, rendering it legal, and a judgment of quando acciderint, may be had against it.  Massam v. Harding, 2 Atk. 291.  Bunb. 339.  Fortrey v. Fortrey, 2 Vern. 134.  If the redemption be equitable assets, it will not, it has been held, be affected by a judgment at law.  In the second resolution, in Deg. v. Deg. 2 P. Will. 416, it is said, " The premises devised being " mortgaged in fee by the testator, and he having nothing but an equity of " redemption, could be only equitable assets, and consequently must go " among all the creditors equally ; forasmuch as a debt by judgment and " a debt by simple contract are, in conscience, equal." But this position is a little shaken in the decision in Sharpe v. the Earl of Scarborough, 4 Ves. J. 538.  It was there ruled, that an equity of redemption is not equitable assets, at least against judgment creditors who have a right to redeem, and that against such the court would never marshal the assets. If this decision went on a principle of rendering equitable estates liable in equity to the same liens as legal estates are at law, it seems to overturn the maxim of the court, that in conscience all debts are equal.  If, however, the mortgage was by way of demise, (and the contrary does not appear) then the judgment of the chancellor will not oppugn those of his predecessors.  But on these points the learned in the law must make their own conclusions.

or had no title, and the party purchasing is evicted by a prior incumbrance. But it is under *that* we contend the purchase is made. The words of our act are, all lands and " real " estate." 1 Vol. Rev. Laws, 388. The form of the execution given is against real estate whereof " seised." There is nothing to restrain the word to legal seisins. The word seisin has an equitable interpretation. 2 Bro. C. Rep. 268. 272. There may be an equitable seisin of an equity of redemption, for it admits of a tenancy by the curtesy, and to create such a tenancy there must be a seisin of the wife. The case cited from Atkyns, and 1 Pow. on Mort. 352-3, show this. We have a complete union of legal and equitable interests; we had the first, and we bought the latter. But whatever may be the reasonings from the common law and English authorities, we rest on the words of our statute, which subjects to sale under a fi. fa. " all real estates," without confining the operation of the words to such as are legal only. The English act of parliament furnishes no kind of reasoning against this, it makes land only extendible, and not saleable. Yet under that very law, lands on which there has been an extent upon a statute merchant, may be extended upon an elegit †. Vin. Abr. Tit. Execution, M. 1. and the notes. So if a reversioner upon a lease for years acknowledge a statute &c. the rent and reversion will both be extendible ‡. Bac. Abr. tit. Execution, B. page 339. 2 Rol. Abr. 472. Co. Litt. 135. A rent charge § is also extendible. 2 Show. 85. Comb. 391. Our policy makes land more liable than the English code. On a deficiency of personal assets, the court of probates can order a sale of the real **. In the very case of goods pawned, the judgment creditor obtains an interest, 3 Bulst. 17 ††; and though these cannot be taken in execution, that arises only because possession is proof of property, which is not the case with land. It is said we cannot have the benefit of our execution, because in the case put, a sci. fa. would not lie against the tertenant. This reasoning would equally prevent selling where the legal estate is in the trustee; yet it was never known to prevail against an execution concerning

ALBANY, 1804.

Thos. Waters and others, v. John Stewart.

† The case was, a connusee of a statute was put into possession, under the extent, his creditor sued out an elegit against the land while in extent, as well he might.

‡ The reversion being extendible, the rent will go with it, as its incident.

§ It savours of the realty, and land in the statute is held to include any hereditament in the land, & as the connusee has, by the words of the statute, an estate of freehold in the premises, he may distrain and avow for the rent.

** 1 Rev. Laws, 323. †† " If a man doth gage goods in pledge for " £40, borrowed upon them, afterwards the debtor is condemned in £100 " debts to another, these goods shall not be taken in execution until the " £40 be paid; for the *creditor* hath an interest in them." The £40 creditor.

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

* 1 Rev.Laws,
66.

uses *.   A vendee of partnership stock taken in execution for a debt of one of the firm, must, before he can have complete enjoyment of his purchase, discharge the lien of the partner ; yet this has never been urged as a reason against such a sale. The same principle applies to equities of redemption.   Our lands do not produce rents, and therefore convenience dictated our law to sell the soil, because possession under an elegit would never pay the debt.   The act of the legislature directs the realty to be sold in the same manner as personal estate.

, Van Vecten and Benson in reply.   The arguments opposed to us are grounded on an application of equitable rights to legal estates.   They tend to confound all distinctions between equitable and legal jurisdictions.   They subvert established forms which have ever been held the land marks of property. The tenancy by the curtesy spoken of in the case from Atkyns †, cited in 1 Pow. on Mort. 353, was an equitable tenancy, founded on an equitable seisin, and therefore no authority to prove a legal right on an equitable estate.   Only *legal* interests are liable to execution, because the law gives recourse against that only, to which the officer selling can give a legal title.   Of lands articled, a man may be tenant by the curtesy, 2 Vern. 536 ‡.   But can his interest in such be taken on an execution ?   Ejectment will not lie for an equity of redemption ; chancery must give effect to the purchase ; therefore on a fi. fa. it cannot be taken, legal rights being always accompanied by legal remedies.   The properties of an equity of redemption which it has analogous to an estate at law, such as being descendible, deviseable, &c. can be availed of only before the chancellor ; therefore, the same analogy would say an equity of redemption can be sold only by application to him.   But though the equitable qualifications of property may be similar to those of correspondent interests at law, that is only the result of the principle of equitas sequitur legem.   Not that they are objects of legal cognizance.   Lands articled descend ; a contract partly executed, may be availed of in chancery, but not at law, and the interests acquired under neither can be liable to a sale by the sheriff.   In the cases of trust made saleable by the statute, no beneficial interest of a third person intervenes, such as the mortgagee has at law.   The necessity of a statute § provision to make such estates liable to execution, shows that the words of the law subjecting real estates

† Casborne v.
Scarfe & In-
glis, 1. Atk.
603.

‡ Sweetapple
v. Bindon.

§ Act con-
cerning uses.

to execution could not have been intended to extend to equitable seisins, for then the other statute would have been unnecessary. The right to vote and the right of settlement, which may be exercised and gained by a mortgagor, depend not on his freehold, but on his possession, and when he loses *that*, he loses his right *. Did they rest on his freehold interest, they would be the same, whether in or out of possession; and the act bestowing the right of suffrage, was passed only because without it, even by his possession, as he had no freehold, it would not be conferred. Upon the same principle rests his power of levying a fine; when out of possession, he cannot †, 1 Pow. on Mort. 220 ; but after a mortgage in fee, can he make a tenant to the præcipe, for the purpose of suffering a common recovery ? All his rights depend on his possession ; therefore he, like a disseisor, may bring trespass. The reason why partnership stock may be sold under an execution against one of the firm, is, that the vendee may enter into possession with his co-tenant. This cannot be done on an equity of redemption. That a reconveyance of the mortgaged premises is unnecessary, is true only in certain cases. If the mortgagor remain in possession and satisfy the debt when due, in any action, by the mortgagee, he would be allowed to show performance of the condition ; and if the mortgage had been given up or cancelled, a jury would, in all such cases, be directed to presume a reconveyance. But if the mortgage is forfeited, and the estate become absolute in the mortgagee, then we say a reconveyance in strictness is necessary ‡. In case of an assignment of mortgaged premises, the mortgagee is liable only when, after a forfeiture, and before foreclosure, he assigns *absolutely*. Not because the freehold is not in him, but because he has exceeded his equitable authority, equity will make him responsible; his right being *there* subject to redemption. That specialty creditors have in equity any preference is a mistake, for unless the judgment creditor first removes the mortgage, he comes in pari passu §. When he gains a preference, it is not on the foot of his equitable lien, but because having discharged the legal incumbrance, he stands on his legal rights, and is in some degree a purchaser. 3 Atk. 293. 1 Pow. on Mort. 369 to 374. The argument, therefore, that the present decree tends to defeat equitable distribution, and take away equitable assets, remains

ALBANY, 1804.

Thos. Waters and others, v. John Stewart.

* Vide ante page 58, note ‡‡.

† Ante page. 57, note **.

‡ Ante page 58, note †.

§ Ante page 59, note §.

totally unanswered. Chancery requires a judgment creditor to sue out execution, before it will allow him to redeem a mortgaged term, only from the analogy which it constantly preserves to legal principles. Because at law, a chattel interest, like a term, is bound only from delivery of the writ. Shirley v. Watts, 2 Atk. 200. 1 Pow. on Mort. 349. But at law even this does not affect it. Burden v. Kennedy, 3 Atk. 739. In Plunket v. Pierson, 2 Atk. 292, the lord chancellor asked the bar whether an equity of redemption had ever been held liable to an execution by a bond creditor, and the unanimous answer was in the negative. In case of a mortgage in fee, the judgment creditors must give notice to the mortgagee, and request him to receive his money. If he receive it, the mortgage being removed, execution may issue ; if he refuse, the creditors acquire a lien on the premises, not by virtue of their judgment, but of the notice. 1 Pow. on Mort. 359, 360. Greswold v. Marsham, 2 Ch. Ca. 170. The words of the statute do not say equitable interests ; and this is the express ground of the decision in Lyster v. Dolland, because acts of parliament, and acts of our legislature, apply only to matters of law, unless their extent be declared. Even the statutes of Bankrupts do not affect an equity of redemption * ; for, after the conveyance of the bankrupt's estate by the commissioners to his assignees, he still may redeem. If an execution will attach on it, whether the mortgagor be in possession or out of possession, is immaterial ; and yet it is conceded if the latter be the case, it cannot be touched. But allowing him in possession, a sale by the sheriff could convey no title to be enforced at law ; for in an ejectment against the mortgagor, as he would be no party to the deed under which the plaintiff would claim, he could not be estopped from showing a paramount title in the mortgagee ; and in ejectment you must recover by the strength of your own, not the weakness of your adversary's title. A sale by the mortgagor of his *interest* in the redemption, for it is not an *estate*, is merely in the nature of a contract to be perfected in equity. We therefore contend the sale was void in itself, for so completely is the legal estate in the mortgagee, that he has a right to distrain for rent arrear, Moss v. Gallimore, Doug. 279, and this even if due on a lease made prior to the mortgage. In this very case too the interest of the mortgagor is in a legal sense, reduced even below that of a tenant at will.

* This is a mistake. Even under the English statute, which is not so full as our act of Congress, an equity of redemption passes by the commissioners' assignment. Vandenanker v. Desbrough, 2 Vern. 96. See Bank. Act, sec. 12.

Spencer, J.  Two questions have been raised for the de-
termination of the court : 1. Whether the appellants who are
the heirs of Sarah, who was the wife of Henry Wisner, were
creditors under the marriage contract, so that, in equity, that
contract bound the premises in question to pay those demands,
after paying the mortgage given to Beekman ? 2. Whether an
equity of redemption could be seized and sold by virtue of an
execution at law ?   It will not be expected, that any opinion
will be pronounced on the first question.   It appears not to
have been insisted on in the court of chancery ; and although
the appellants' counsel would have had a right to argue it in
this court, still they have not attempted it.   Of course it will,
as respects myself, be laid out of the case.   The decision of
the second question, will require an attentive consideration of
our own municipal laws, with such aid in the construction of
them, as we may draw by analogical reasoning from the Bri-
tish authorities : for I take it to be well settled, that in Eng-
land there cannot be a sale of an equity of redemption upon a
mortgage for a term of years.   It perhaps may admit of doubt,
whether an elegit or levari facias cannot there be served and
executed upon land mortgaged in fee, whilst the mortgagor is
in possession, and when his right consists of an equity of re-
demption only.   That it was the uniform practice, under the
colonial government, to sell under a fi. fa. all kinds of interests
which the debtor had in lands, including equities of redemp-
tion, has been admitted.   That this practice continued until
the year 1787, has been also admitted.   And though the prac-
tice cannot legalize a procedure unauthorized or forbidden by
the law, yet, in cases admitting of doubt, it may, and ought to
be regarded, in expounding statutory provisions, in relation to
the same subject.   By the statute of the 19th of March, 1787,
it is enacted, " that all and singular the lands, tenements, and
" real estate, of every debtor shall be, and hereby are, made
" liable to be sold on execution," &c.   This statute was re-
enacted among the revised laws, in 1801.   The extent and
legal operation of the term real estate, will, in a great measure,
decide the question.   Courts of equity and courts of law
undoubtedly regard the rights of a mortgagor and mortgagee,
in a different manner.   In the former, the land is considered
as a pledge for the debt secured, and the mortgagor is consi-
dered the real owner ; in the latter, the legal estate, to some

K

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

purposes, is considered to be in the mortgagee, from the moment of the execution of the mortgage, liable to be defeated by the performance of the condition, to wit, the payment of the money. In other respects, the courts of law follow the notions of a court of equity, and consider the mortgagee as holding the mortgage, as a mere security for the money due. Thus it is, that at law, on the death of the mortgagee, the money due is considered as personal assets, in the hands of executors or administrators. So, too, on the death of the mortgagor, his right to the mortgaged property, if he originally had a fee, and the mortgage was in fee, will descend to his heirs, and not to his personal representatives. An equity of redemption may also be entailed; whereas, if it was considered a chattel, it could not be—nor could it, if considered as a mere right. By a devise of all lands, tenements, and hereditaments, a mortgage in fee will not pass, unless the equity of redemption be foreclosed. Again—a husband may be tenant by the curtesy of an equity of redemption. To perfect this right, four things are necessary; *marriage, issue, death of the* wife, and seisin in *fact.* And, as to the latter requisite, it is laid down, that an equity of redemption was not to be considered as a mere right only, but must be taken to be such an estate whereof there might be a seisin. From all these considerations, it appears to me, that a mortgagor's right in an equity of redemption, is to be considered as comprehended within the broad expression of "real estate." I am the more confirmed in this opinion, from the general and almost universal idea and practice which has prevailed for a series of years, as well as from the legislative declaration, that a mortgagor in possession is a freeholder, within the meaning of the constitution, and as such entitled to vote. It has, however, been said by the appellants' counsel, that the form of the execution requires a legal *seisin,* and that a mortgagor cannot be legally *seised.* This exception has already, in some measure, been considered. There are two answers to it: First—the form of the execution ought not to control the declared intent of the legislature, in rendering every species of real *estate* liable to sale; and on no sound construction can this exposition be admitted. Second—when a statute speaks of a *seisin,* an equitable seisin may be as well intended as a legal one; and the term is applicable to both. I can, there-

2 Burr. 978.

1 Atk. 605.

Ibid. 606.

fore, perceive no substantial objection to the sale of an equity
of redemption, under an execution at law.  Difficulties have
been started, in relation to the provision, giving remedy to
purchasers evicted for want of title in the person against whom
the execution issued; and it is said, that the purchaser can
immediately have this remedy, where an equity of redemption
only has been sold.  If this position was well founded, it
would only prove, that the legislature had not foreseen all the
cases which might occur under that provision; but it certain-
ly proves nothing as to the right to sell an equity of redemp-
tion.  I do not, however, perceive the difficulties, which have
been pointed out, in the same light the appellants' counsel
have.  The authority given to the supreme court, after suing
out the original and stating the grievance, is, to hear the com-
plaint, and do justice to the parties.  Surely it would be at-
tended with no difficulty to decide, whether the equity of re-
demption sold, was incumbered beyond the amount stated, at
the time of the sale; or, whether the purchaser was, in judg-
ment of law, evicted of the equity of redemption he had pur-
chased.  Arguments *ab inconvenienti* have been suggested:
there can scarcely exist a case, however well settled, where
such arguments cannot be urged; they prove nothing, and
are to be listened to only in very doubtful cases.  In the pre-
sent case, there would be no more difficulty nor inconvenience
than exists every day, where there are several judgments, and
the senior judgment creditor is disinclined to a sale.  On the
whole, I am for affirming the chancellor's decree: but as the
present question has never before occurred in our courts, ex-
cept in one instance, where no decision was made, I do not
think that it would be discreet to impose a mulct.  The re-
spondent ought to have his costs only.

Kent, J.  The right of redemption was contended for in
the court below, and again in this court, on two grounds:
1st. That the marriage contract bound in equity the premises
in question, to pay the money that Henry Wisner had cove-
nanted to pay; and that the same belonged to the appellant
and the other children of Sarah Waters, who were creditors
under that contract.  2dly. That an equity of redemption can-
not be seized and sold by virtue of an execution at law; and
consequently, that the same still exists in the appellant Wa-
ters, as a purchaser under the devisees of Wisner.  I do not

Thos. Waters
and others,
v.
John Stewart.

perceive that there is any basis for the first doctrine. The land in question had no connexion whatever with the subject matter of the contract. There is no instance where an equitable lien has been carried to such an extent. The consideration of the contract did not arise from the land; and there is no equity that this particular land should stand charged with the fulfilment of the contract, when there was no agreement to that effect, and especially as against a creditor or a purchaser, without notice of the contract. The only real question then in this case is, whether an equity of redemption can be sold under an execution at law? This is a point of importance and difficulty; and although I cannot arrive at any conclusion altogether free from embarrassment, I am inclined to the opinion, that, under the act of *our* legislature, an equity of redemption can be sold at law; and consequently, that the decree is correct, and ought to be affirmed. I admit, that under the English law, an equity of redemption cannot be sold by process at law; and yet their decisions have approached pretty nearly to the same thing. According to strict technical form and language, a mortgage in fee is, at law, a conveyance of the estate, and differs from an absolute sale only in respect to the equity of redemption, which is a mere equitable interest. As far as concerns the rights of the mortgagee, these strict formal ideas are fully enforced. Hence a mortgagor in possession is held to be like a tenant at will: he receives the rent by a tacit agreement; but the legal title to the rent is in the mortgagee, who may put himself in possession of it, and turn out the mortgagor whenever he pleases. The mortgagor, in such a case, would not be entitled even to a notice to quit, nor to reap the emblements as other tenants at will are, because all are liable to the debt. But when the mortgagee's rights are not in question, a mortgagor in possession, and before foreclosure, is a totally distinct character. He is regarded as the owner of the land, and the mortgage is treated as a mere incumbrance. He may levy a fine, and thereby bar all the world, except the mortgagee, who is exempted from its operation by the nature of the contract. He may suffer a common recovery, or otherwise aliene the land. It descends to his heirs as real estate. It is deviseable as such. These are all marks of ownership, and go to show, that " a mortgage, until foreclosure, is now considered as a

Cro. Jac. 659.
Keech v. Hall,
Doug. 21.
Moss v. Gallimore, Doug.
279.

1 Vent. 82.
Pow. on Mort.
75, 76, 113.
126. 3 D. & E.
88 to 98.

Pow. on Mort.
170.

"personal engagement only, in which the land is merely a "pledge for the money, and remains in the mortgagor to "every purpose, except that of securing the loan." It has, accordingly, been frequently observed by the judges in the court of K. B. that a mortgagee, notwithstanding the form of the instrument, has but a chattel interest, and the mortgage is only a security; that it was an affront to common sense, to say the mortgagor is not the real owner; that the law recognizes his interest, and he has a right to the possession till the mortgagee brings his ejectment; that neither courts of law nor equity lose sight of what the parties intended, and will not look to the mere form of the conveyance, but will consider what the parties really meant by it; that the mortgagor in possession is owner to all the world, and the estate of the mortgagee a mere chattel interest, the same as the money due by the mortgage; that it accordingly goes to his executors, and is deviseable in the same loose manner as other chattels; that the assignment of the debt, or even forgiving it, and that too by parol, draws the land after it, as a consequence. These different and apparently contradictory lights in which the subject is viewed, arise from this circumstance— that, in the one case, the courts speak of the mortgage in reference to the rights of the mortgagee; and, in the other case, as it respects all the world, except the mortgagee. In equity, the mortgagor has been uniformly regarded as the legal owner; and the courts of law have latterly, in many respects, adopted the more rational ideas of chancery on this subject. If the mortgagor is to be deemed the owner of the land, as respects his own acts, and as respects the world, subject only to the lien of the mortgagee, it is neither unreasonable nor improper, that courts of law, at the instance of other creditors, should treat the land as his, under the same limitation. There is no more inconvenience in subjecting the land to execution, because there is a mortgage upon it, than there is where a prior judgment has bound it. The vendee, in both cases, will purchase subject to the lien; and he can calculate the value, deducting the incumbrance, as correctly in the one case as in the other. The difficulties suggested on the subject, are not found to exist in practice. The English courts have gone so far, as to consider the equity of redemption of a mortgage of a term, as bound by an execution

ALBANY, 1801.

Thos. Waters and others, v. John Stewart.

Doug. 632, by D. Ld. Mansfield, Rex v. St. Michael. 1 East. 293. 1 H. Black. 117. 2 Burr. 978-9. Eaton v. Jaques. Doug. 455.

at law in the like manner as if it was the term itself. A judgment creditor is required to take out execution at law, in order to create a lien upon an equity of redemption of a term, before he is entitled to go into chancery to redeem. The statute of frauds also makes lands, in the hand of a trustee, liable to sale on an execution against the cestui que trust; but this is considered as applicable only to a strict technical trust, and no case has gone so far as to allow an equity of redemption to be sold at law. This seems, however, to be implied in the remark, that a tenant, by the elegit, can redeem an equity of redemption; for, to be a tenant by the elegit, he must have been put into possession by the sheriff. But the question was finally settled in 1781. An equity of redemption was sold on execution; and on a bill to redeem, it was contended on behalf of the purchaser, that an equitable interest might be taken in execution; and that the sheriff's sale was the same as the conveyance of it. The lord chancellor, however, after some hesitation, set aside the sale, on the ground, that an equity of redemption was not liable to be taken in execution under the statute of frauds; although he admitted, that under that statute the sheriff might extend an equitable interest, or in other words, a chose in action. Choses in action are, in other instances, liable to execution at law. Long before the statute of frauds, it was held, that the sheriff, on an elegit, might extend a rent charge, although he could not a rent seek; which, being wholly detached from any right in, or power over, the land, could not be delivered as liberum tenementum. The sale of an equity, with us, must then depend upon the construction of our statute. I have taken this slight view of the English law to show, that if our act be an innovation in this instance on the previous law, there is nothing in it that ought to alarm us, as incongruous or unreasonable; for it is certainly agreeable to the general bent and spirit of the more modern decisions. If I am rightly informed, we have in this state a long and established practice in favour of such sales. This usage is of itself deserving of considerable weight. The practice of selling equities of redemption, with us, is supposed to be at least as ancient as the statute of 5 G. 2 c. 7, in the year 1732. That statute made lands, hereditaments, and real estate, within the English colonies, chargeable with debts, and subject to like remedy and process in

Thos. Waters
and others,
v.
John Stewart.

3 Atk. 200.
29 C. 2, adopted, 1 Rev.
Laws, 68.
Bunb. 347.

Lyster v. Dolland, 3 Bro.
Ch. Ca. 478.
1 Ves. J. 431.
S. C. Burden
v. Kennedy,
3 Atk. 739.

Cro. Eliz. 742.
Ibid. 656.

any court of law or equity, by seizing and selling as personal estates. The statute uses the broad expressions of lands, hereditaments, and real estates. They were to be treated exactly as personal property; and it became usual to regard lands and real estates as assets in the hands of executors, and to cause them to be sold on execution against executors. This practice continued down to the year 1786, when it was abolished. Equities of redemption continued to be sold to the time of the first revision of our statute law, when the sale of lands on execution was particularly regulated; and if it had been intended to have abolished that practice, it is probable the act would have contained some explicit declaration on the subject, or at least that it would have used precise and definite terms, that could not mislead, or be misunderstood. But the act of 1787, adopted the same loose latitudinary terms as those in the statute of G. 2. It declares, that all and singular the lands, tenements, and real estate, of every debtor, shall be liable to be sold upon execution, to be issued by virtue of a judgment in any court of record. This whole provision is, therefore, made by the very terms of it, exclusively applicable to a court of law; and whatever interests are included within the description of real estate, they are equally included within an execution at law. And there can be no doubt, I think, but that an equity of redemption will be comprehended in the expression. The form of the execution prescribed by the act, ought not to be construed to control this substantive part of the statute; and, if they cannot be reconciled, the general direction, from the nature of the two provisions, ought to prevail. We have seen, from a case I have already mentioned, that a liberum tenementum, or freehold, will include a rent charge, although the fee of the land resides elsewhere; and the word Land, in the body of the execution, will apply to the mortgagor's estate, especially as the word Seisin, in a statute, is frequently construed to apply to an equitable, as well as to a strict legal seisin. The application is always according to the subject matter, and to give the statute complete effect. There were several objections strongly urged to this construction of the act. It was said, that the remedial provision in the other parts of the act, in case of eviction of the purchaser, will not apply to the case of a purchaser of an equity of redemption. I have not been able to

ALBANY,
1804.

Thos. Waters and others,
v.
John Stewart.

Laws o' N. Y. edit. 1789, v. i. p. 287.

2 Bro. Ch. Ca. 268 to 254.

ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

discern, why the purchaser of an equity of redemption cannot, in the first place, obtain possession of the land, as against the mortgagor or his assigns; and why he may not afterwards be evicted. The judgment is undoubtedly a lien on the land, notwithstanding the mortgage. We have seen, that where a term for years is mortgaged, the equity of redemption is bound by execution in like manner, as if the term had not been mortgaged; and, except where the mortgagee himself is a party, I should doubt whether the mortgagor would be permitted to set up the mortgage in opposition to the purchaser. Where the mortgagee's rights are not in question, the mortgagor is regarded as the owner. A court surely would not permit a juryman to excuse himself, by denying he was a freeholder, because there was a mortgage on his land. A mortgagor in possession, and before foreclosure, is competent to be a tenant to the præcipe; for he can levy a fine, or suffer a recovery. He is therefore a tertenant; and, in the case stated at the bar, I should incline to think the judgment creditor might have a scire facias against the heir or assignee of the mortgagor. But it is not essential to give any definitive opinion on these points; nor do I wish to be understood to do so—for, admitting that the remedies to the purchaser of an equity of redemption are not as complete as they are in other cases, this will not limit the operation of the positive directions and powers in the act to which I have alluded. It would only be to be regretted, that the remedial part of the act was not extensive enough; and it might lead to legislative amendment. The creditor in England was allowed his extent a long time before the statute provided a remedy for him on eviction. And perhaps similar difficulties might be started, as to the power of a court of law, to give full effect to the purchase of a trust estate, under the statute of frauds; but still the sale thereof, on execution, is not to be disputed. The selling of real estates, and equities of redemption on execution, is peculiar to us; and it would not be surprising, if some of the technical rules of the common law might meet with difficulty in their application to the case. If the purchaser can take possession as against the mortgagor, when in possession, he may defend himself against an ejectment by the mortgagee, by bringing the debt into court. In this way he may protect himself completely at law. The doctrine of

equitable assets (and which was much pressed upon us in the argument) is not, however, affected by allowing the sale of an equity of redemption. It is settled, that an equity of redemption is not equitable assets, as against judgment creditors. Arguments drawn from inconvenience, are entitled to much consideration, in cases of doubtful construction; but, in the present case, I am of opinion they operate in favour of the decree. A very considerable part of the lands in this state, are under mortgage to the loan-offices, and to individuals: it is likely they will continue so; and if judgment creditors are under a necessity in every case of resorting to chancery, for leave to sell the land of the debtor, it would create double suits and double expense, and would lead to much inconvenience and delay. After, therefore, the best attention I have been able to bestow upon this nice and important legal question, and which was argued by counsel in a manner that did much credit to their researches and abilities, I am of opinion the decree below ought to be affirmed. The mortgagor was in possession when the equity was sold, and that formed a material ingredient in the case. This opinion, therefore, is not intended to apply to the case of a mortgagee in possession.